Filed 12/10/24; Certified for Publication 12/18/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br>CHAROME DAVIS,<br><br>      Defendant and Appellant. | A168530<br><br>(Alameda County<br>Super. Ct. No. 158104) |

Defendant Charome Davis appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6 following an evidentiary hearing. Davis contends the prosecution presented insufficient evidence to support the trial court's findings that he was the actual killer and that he acted with reckless indifference for human life. Finding sufficient evidence to support the trial court's ruling, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Underlying Plea to Voluntary Manslaughter*

In 2008, the Alameda County District Attorney charged Davis with the murder of Rudy Henderson, Jr. on or about March 23, 2006 (Pen. Code,[1] § 187, subd. (a); count 1), and possession of a firearm by a felon (former § 12021, subd. (a)(1); count 2). As to count 1, it was alleged the murder was

---

[1] Undesignated statutory references are to the Penal Code.

1

aided and abetted by Davis while he was engaged in the commission of a robbery (§ 190.2, subd. (a)(17)(A)).

In August 2010, Davis pleaded guilty to voluntary manslaughter (§ 192, subd. (a); amended count 1) and admitted he personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)(1)). He was sentenced to 21 years in prison.

*Petition for Resentencing*

In April 2022, Davis filed a petition for resentencing under former section 1170.95 (now § 1172.6),[2] seeking to vacate his voluntary manslaughter conviction on the ground he could not be convicted of murder based on recent changes to the murder statutes. The prosecution conceded Davis made a prima facie case, and the trial court scheduled an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).

*The Prosecution's Evidence at the Evidentiary Hearing*

The prosecution argued Davis was not entitled to relief under section 1172.6 because he was the actual killer of Henderson. For the evidentiary hearing, the prosecution submitted (1) the reporter's transcript of the preliminary hearing held in January 2008 and (2) the audio recording and transcript of a police interview with witness R.L.[3]

Police Interview with R.L.

On May 16, 2006, Oakland Police Sergeant Derwin Longmire and his partner Sergeant Nolan interviewed R.L. in an interview room at the

---

[2] The statute was renumbered section 1172.6 without substantive change, effective June 30, 2022, before the trial court denied the petition in this case. (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).) We refer to the current statute in this opinion.

[3] The recording had been played and admitted into evidence at the preliminary hearing.

2

Oakland Police Department. R.L. told the police that "Charome [Davis] and Moose" were involved in the shooting of Henderson.

R.L. said that, on the night of the shooting, she was out on Hamilton Street with "Timothy," "Moose," "Roscoe," "Kevin", and "J," and Moose was talking about doing something. Longmire asked what Moose was talking about doing, and R.L. responded, "Uh . . . premeditated murder, basically" of "Rudy [Henderson]." She reported that Moose was talking on the phone with Davis, and Moose told Davis, " 'Come down here right now. He ridin' around right now. Before you leave the 'hood, hurry up. Get here. I see him right now. He just turned the corner, so hurry up. He has some money on him.' " R.L. said Moose "basically wanted [Henderson] robbed."

R.L. told the police that Davis arrived and talked with Moose. Davis "was nervous, and he said he couldn't do it by hisself, and 'Let me use his car so I'll go get somebody else.' " Davis drove away in Moose's car and returned 10 or 20 minutes later with a "young guy," whom R.L. described as 15 or 16 years old, short, light-skinned, with dreads. R.L. heard Davis say he needed something to cover his face, and J gave him a t-shirt.

R.L. said Davis and the "young guy" walked toward 70th Avenue, and "Moose told J to distract Rudy [Henderson]" by showing Henderson some shoes and asking him if he wanted to buy them. Henderson drove by, and J asked him if he wanted to buy some shoes. Henderson stopped his car, and J walked up to the car with a "shoe in his hand." R.L. said Henderson opened the door of his car, but he did not get out. Then "Charome and his little friend" ran up to Henderson's car, and R.L. saw Davis had a gun in his hand. Davis ran to the driver's side and said, " 'Get out the car. Get out the car.' " R.L. said that when Davis ran to the car, he "grabbed Rudy, said, 'Get out the car,' but didn't give him a chance to get out. He shot him."

3

Sergeant Longmire asked R.L. how much time passed from when she heard Davis tell Henderson to get out of the car to when she heard the gunshots, and R.L. said, "like two minutes apart." Longmire followed up, "Okay. Say . . . say it for me, what you heard, and then wait as long as it was until you heard the gunshots." R.L. responded, " 'Get out,' POW POW." Her response took less than two seconds. R.L. agreed with Longmire that "it was just like that" and "It was fast."

R.L. said, "Charome fired the shots," and she thought Davis was holding the gun "near his chest," but when she was asked if she saw the flash from the gun, she said, no, "I was running when I heard the shot." She explained, "I never did look back when I heard the shot. I just kept runnin.' " Longmire asked whether it was "fair to say, then, that you're not sure which one of the two fired, because you weren't looking," and R.L. said, "Yeah."

R.L. told the police that the day after the shooting, Davis asked R.L. if she saw anything and, "have I heard anything else about it, what's been happenin,' what's been goin' on?" Davis said something like, " 'I don't . . . I don't wanna go down,' " which R.L. understood to be an implicit admission that he had fired the gun.

At the end of his questioning, Longmire asked R.L. if he (meaning Longmire himself) had made her any promises, and she responded, "I don't remember." R.L. said Longmire did not threaten her and he was not rude or uncourteous, and she agreed she told him everything "under [her] own free will."

Preliminary Hearing Transcript

The preliminary hearing was held in January 2008, about 20 months after R.L.'s recorded police interview. R.L., Sergeant Longmire, and another officer testified.

4

*R.L.*

R.L. was 20 years old at the time of the hearing, and she did not want to testify.[4]  R.L. "knew of" Davis and a person called "Moose," but she denied she knew Davis from school.[5]  Asked if she knew about a shooting at 70th and Hamilton in March 2006, R.L. responded, "I'm not sure of that" and "I don't know about the shooting."  She acknowledged that she heard a shooting but said she did not see it.  She testified she could not remember being at the location before the shooting.  R.L. did not remember hearing Moose in a phone conversation, overhearing a conversation about a plan to stop a car, or seeing Davis the night of the shooting.

R.L. testified, "All I remember is talking to a lady.  I sold her a bag.  Next minute I know, I'm running.  We all running.  I don't remember.  Me and her."  They "[were] running because [they] heard gunshots."  R.L. testified she was talking to a lady "about my money that her dope fiend friend owed me.  Because I gave her weed.  She didn't give me my money."

R.L. did recall talking with two Oakland Police Department homicide detectives, but she did not remember the conversation.  She testified that she forgot the interview because "last year I tried to kill myself and just a few

---

[4] It is apparent from the reporter's transcript that R.L. was taken into custody to secure her testimony at the preliminary hearing.  R.L. described Davis as wearing "[j]ail clothes like me"; in cross-examination, defense counsel asked R.L. whether she had been to Santa Rita jail "other than the time you're here now for this"; and at the end of questioning, the court stated R.L. "may be released from custody" subject to recall.

[5] In the police interview, R.L. said she recognized Davis because she "[b]een knowin' him from the streets, and seein' at school when I was at school."

5

weeks ago I got beat up and my head was banged to the concrete."[6]  R.L. acknowledged it was her voice in the interview recording, but listening to the recording did not refresh her memory.  She did not remember any of the events she described in the interview and denied she knew a person called J.

R.L. testified she had "a threatened conversation" with Sergeant Longmire.  Asked what she meant, R.L. responded, " 'If you don't do what I say, I'll hunt you for the rest of your life,' D. Longmire."  She did not remember when this conversation occurred, but she testified, "I'm scared of him. I don't want to look at him.  He scares me.  That's why I take psych. meds now, because of him."  R.L. testified she lost two jobs because Longmire went to her jobs.  "He kept following [her]" and "went to all [her] family's houses, every last one of them."  R.L. testified she and her father reported Longmire to Internal Affairs.

R.L. was prescribed medication while in custody in advance of her testimony because she was hallucinating and talking to herself.

*Sergeant Longmire*

Sergeant Longmire interviewed R.L. on May 16, 2006.  R.L. was placed in an interview room at 2:15 p.m., Longmire began interviewing her at 2:45 p.m., and he started recording the interview at 3:55 p.m.  In the 70 minutes before he began recording, Longmire talked with R.L. about the shooting, and he testified, "she was semicooperative," meaning she was "willing to talk about herself," but she "[d]id not want to be specific about the actual murder

---

[6] R.L. could not remember where she had been beaten up and did not know why she had been attacked, but she testified, "they snatched me from the back with a plastic bag over my head and hit me upside my head" and "I wasn't out enough for them and they banged my head to the concrete and I was out.  I don't remember what they did after that."  The attack was not reported to the police.

of Rudy Henderson, Jr." Longmire testified it "took some time to actually get to the point where she was actually willing to discuss it in detail." He denied that he threatened R.L. or that she was under arrest when he spoke with her. Longmire recalled that he told R.L. if she had information pertinent to the case, she could apply to the Witness Protection program.

### Officer Armerding

Oakland Police Officer Samuel Armerding testified that around 12:15 a.m. on March 23, 2006, he was dispatched to 71st and Hamilton on a report of a shooting. Armerding spoke with potential witnesses at the scene. A young woman named Woods approached Armerding. She was crying, and she told him she had been with the victim that night. Armerding testified that Woods told him Henderson had been driving her around in his black Lexus. Woods said that Henderson stopped the car and spoke with two Black males who offered to sell him a pair of shoes. She said Henderson got out of the car to look at the shoes, and three Black males wearing dark clothing and masks came out from behind a van. At least one of the assailants had a black handgun, and they shot Henderson outside his car. Woods said she got out of the car and ran eastbound, and she saw the three men get in Henderson's Lexus and drive westbound.

### Trial Court Ruling

The trial court heard argument on the petition for resentencing on June 16, 2023, and issued a written decision denying the petition on June 27, 2023.

In its written order, the court concluded the prosecution "has proven beyond a reasonable doubt that Petitioner is guilty of the murder of Rudy Henderson, Jr. under California law . . . ." The court wrote, "Although the evidence presents a close question, the Court finds that [the prosecution] has

7

proven beyond a reasonable doubt that Petitioner was the actual killer" and further that he was a major participant in the underlying robbery who acted with reckless indifference to human life.

The court summarized R.L.'s interview with the police and her later testimony at the preliminary hearing and determined her statements in the police interview were more credible than her subsequent testimony. The court noted that in the police interview, R.L. "gave a detailed description of the events that she witnessed," "[h]er answers did not reveal any motive to fabricate or exaggerate her account," and her "demeanor" (which the court assessed by listening to the audio recording) "was calm." The court found R.L. "answered the investigators' questions in a fairly detai[l]ed manner, directly and without hesitation or obfuscation," and she was not "argumentative or combative with the investigators." In contrast, at the preliminary hearing, R.L. "was combative and sarcastic" and "expressed that she did not want to testify."

The court wrote, "According to RL's witness statement, Petitioner participated, from the beginning, in the plan to commit an armed robbery. He armed himself, recruited a co-participant, concealed his identity, waited in the background for J to distract the victim then rushed to the car, gun in hand. Within a very short period of time, Petitioner ordered the victim to exit the car and grabbed him. Almost immediately thereafter, RL heard gunshots. There is no evidence that the Minor [that is, Davis's confederate described by R.L. as a 'young guy'] possessed a gun. The following day, Petitioner made statements demonstrating consciousness of guilt, although the statements fall short of admitting to being the actual killer."

The court concluded Davis was the actual killer based "upon circumstantial evidence." It reasoned, "Given that Petitioner was armed, ran

8

to the car, physically assaulted the victim, and the almost instantaneous sequence of the assault and the gunshots, the Court finds that the 'only reasonable conclusion supported by the circumstantial evidence is that' Petitioner was the actual killer," quoting CALCRIM No. 224.[7] The court further wrote that "the totality of the evidence" left it "with an 'abiding conviction' that Petitioner was the actual killer," quoting CALCRIM No. 220.[8]

The court also found Davis was a major participant in the underlying felony who acted with reckless indifference for human life, observing Davis "displayed a 'willingness to kill' " (quoting *People v. Clark* (2016) 63 Cal.4th 522, 617) in that he "took multiple steps to coordinate with his co-participants in a plan to commit a violent robbery" and Davis, with a "loaded gun held near his chest, then ran to the victim's car, ordered him out, physically grabbed him, and within seconds shots were fired, killing the victim."

---

[7] CALCRIM No. 224 provides in part, "[B]efore you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that *the only reasonable conclusion supported by the circumstantial evidence is that* the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." (Italics added.)

[8] CALCRIM No. 220 provides in part, "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

## DISCUSSION

A.    *Resentencing Under Section 1172.6*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) "significantly narrowed the scope of the felony-murder rule" and "created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law. Resentencing is available under [section 1172.6] if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' " (*Strong, supra,* 13 Cal.5th at p. 703, quoting § 189, subd. (e)(3).)

Under section 1172.6, a person who was convicted of murder, attempted murder, or voluntary manslaughter under the prior law may file a petition "to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1172.6, subd. (a).)  "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause (*id.*, subd. (c)) and "shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner . . . ." (*id.*, subd. (d)(1)).

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

10

B.  *Standard of Review*

Because the trial court denied the petition based on its factual finding that Davis was the actual killer and, alternatively, its mixed finding of fact and law that he was a major participant in the underlying robbery and acted with reckless indifference to human life, we review the court's ruling for substantial evidence.  (See *People v. Underwood* (2024) 99 Cal.App.5th 303, 314 [reviewing the trial court's findings that the petitioner acted with an intent to kill or with reckless indifference to human life for substantial evidence]; *People v. Clements* (2022) 75 Cal.App.5th 276, 301 (*Clements*) [reviewing the denial of a resentencing petition for substantial evidence because the question whether the petitioner acted with reckless indifference to human life was "predominantly a factual determination"].)

This means "[w]e ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.)  Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements, supra,* 75 Cal.App.5th at p. 298.)

" 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or

11

falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [fact finder]'s verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

C.      *Substantial Evidence Supports the Trial Court's Finding that Davis is Guilty of Murder Under Current Law Because He Was the Actual Killer*

R.L. told the police she observed Davis and Moose plan to rob Henderson and she subsequently saw Davis and a confederate run up to Henderson's car and Davis had a gun in his hand.[9] R.L. said that Davis grabbed Henderson and told him to get out of his car, and then R.L. heard gunshots. She described what she heard as, " 'Get out,' POW POW," with the gunshots following immediately after Davis commanded Henderson to get out of his car. This was substantial circumstantial evidence from which a reasonable fact finder could determine that it was Davis who shot and killed Henderson. As the court explained, "Given that [Davis] was armed, ran to the car, physically assaulted the victim, and the almost instantaneous sequence of the assault and the gunshots, . . . the 'only reasonable conclusion

---

[9] Davis does not dispute that R.L.'s statements in her police interview are admissible for purposes of the evidentiary hearing under section 1172.6, subdivision (d)(3). Further, Davis admitted that he personally used a firearm, which " ' "waives any right to raise questions regarding the evidence" ' " (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458) that he personally used a gun in the killing of Henderson.

supported by the circumstantial evidence is that' [Davis] was the actual killer."

On appeal, Davis argues R.L.'s statements to the police do not provide substantial evidence because R.L. did not see the shooting, and "[t]here were questions about [her] credibility both in the interview and in her preliminary hearing testimony." These arguments are unconvincing. First, viewed in the light most favorable to the judgment, the evidence showed that Davis—while holding a gun—ran up to Henderson and grabbed him, and, as the trial court found, "almost instantaneous[ly]" Henderson was shot and killed. This was sufficient *circumstantial* evidence for the trial court to find that Davis shot Henderson and, thus, was the actual killer, even if R.L. did not *see* Davis shoot Henderson. Second, it was " 'the exclusive province of the trial judge' " in this case to determine R.L.'s credibility; on appeal, we do not reweigh credibility issues or resolve evidentiary conflicts. (*Zamudio, supra*, 43 Cal.4th at p. 357.)

Davis points out that Officer Armerding testified that another witness, Woods, told him that *two* Black males offered to sell Henderson shoes, that Henderson *got out* of his car to look at the shoes, and that *three* Black males came out from behind a van. Davis suggests that the inconsistencies between Woods's account and R.L.'s account (as to the number of purported shoe sellers, the number of assailants, and whether Henderson was out of his car when the assailants ran up to him) render R.L.'s statements insufficiently reliable to provide substantial evidence. In response, the Attorney General notes that Woods's account actually bolsters R.L.'s credibility in significant part, as Woods also described the selling of shoes (a ruse to get Henderson to stop his car) and stated that *one* ("at least one") of the assailants had a gun. The Attorney General further argues that, between the two witnesses, R.L.

13

likely had a better view of the incident because she was on the street, while Woods was inside Henderson's car. But our role on appeal is not to decide whether R.L. or Woods should be deemed more credible. It is enough that R.L.'s statements, "contradicted or uncontradicted" (*Clements*, *supra*, 75 Cal.App.5th at p. 298), support the trial court's finding that Davis was the actual killer.

Next, Davis notes that R.L. initially said "two minutes" passed between when she heard Davis tell Henderson to get out of the car and when she heard the gunshots, but, when Longmire asked her to demonstrate, she described what she heard as, " 'Get out,' POW POW." Davis asserts the trial court's determination that the gunshots followed almost instantaneously after Davis assaulted Henderson is "untenable" given the "significant inconsistency" in R.L.'s statements regarding the timing of events. But, again, we do not reweigh credibility issues or resolve evidentiary conflicts on appeal. (*Zamudio*, *supra*, 43 Cal.4th at p. 357.) " '[E]ven testimony [that] is subject to justifiable suspicion do[es] not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness.' " (*Ibid*.) The trial court in this case was free to accept R.L.'s description that gunshots followed within a second or two of Davis telling Henderson, "Get out."

We also reject Davis's claims the trial court "failed to consider" Sergeant Longmire's testimony suggesting R.L. was reluctant to give her statement to the police and Officer Armerding's testimony about what Woods told him on the night of the shooting. The court was not required to describe every piece of evidence in making its ruling, and we will not presume the court failed to consider the evidence presented. (See *People v. Bryant, Smith*

14

*and Wheeler* (2014) 60 Cal.4th 335, 398 ["As a general rule ' "a trial court is presumed to have been aware of and followed the applicable law" ' "].)

We conclude substantial evidence supports the trial court's finding that Davis is guilty of murder as the actual killer, and, consequently, the court properly denied Davis's petition for resentencing under section 1172.6. We therefore need not consider Davis's second appellate claim that insufficient evidence supports the court's additional (and unnecessary) finding that Davis is guilty of murder as a major participant in the underlying robbery who acted with reckless indifference to human life.

## DISPOSITION

The order denying defendant's petition under section 1172.6 is affirmed.

_____
Miller, J.

WE CONCUR:

_____
Stewart, P. J.

_____
Desautels, J.

A168530, *People v. Davis*

Filed 12/18/24

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CHAROME DAVIS,<br><br>　　　Defendant and Appellant. | A168530<br><br>(Alameda County<br>　Super. Ct. No. 158104) |

**BY THE COURT**:

The opinion in the above-entitled matter filed on December 10, 2024, was not certified for publication in the Official Reports.  For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Stewart, P.J.

1

Court:  Alameda County Superior Court

Trial Judge:  Hon. Thomas Stevens

Audrey R. Chavez, under appointment of the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Eric D. Share, Katherine Seaman, Deputy Attorneys General, for Plaintiff and Respondent

A168530, *People v. Davis*

2